**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:**<br><br>**PERMICO MIDSTREAM PARTNERS HOLDINGS, LLC, *et al.*,**<br><br>**Debtors.**[1] | § | **Chapter 11**<br><br>**Case No. 20-32437 (MI)**<br><br>**(Jointly Administered)** |
| **CORPAC STEEL PRODUCTS CORP.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PERMICO MIDSTREAM PARTNERS, LLC and HGC MIDSTREAM INV LLC,**<br><br>**Defendants.** | § | **Adversary No. 20-03126** |

**DEFENDANT AND COUNTER-PLAINTIFF**
**HGC MIDSTREAM INV LLC'S ANSWER AND**
**COUNTERCLAIM AGAINST CORPAC STEEL PRODUCTS CORP.**

Defendant and Counter-Plaintiff HGC Midstream INV LLC ("HGC") files this Answer to the Complaint filed by Plaintiff Corpac Steel Products Corp. ("Corpac" or "Plaintiff") and Counterclaim against Corpac and would respectfully show as follows:

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: Permico Midstream Partners Holdings, LLC (6374) and Permico Midstream Partners LLC (7902). The location of the Debtors' corporate headquarters and service address is 9301 Southwest Freeway, Suite 308, Houston, TX 77074.

**HGC'S ANSWER TO PLAINTIFF'S COMPLAINT**

1. HGC admits the allegations contained in Paragraph 1 of the Complaint, based on information and belief.

2. HGC admits the allegations contained in Paragraph 2 of the Complaint.

3. HGC admits the allegations contained in Paragraph 3 of the Complaint.

4. HGC admits that this Court has jurisdiction and further alleges that the Court has authority to decide this dispute pursuant to 11 U.S.C. § 506.

5. HGC admits that this is a core proceeding.

6. HGC denies that Plaintiff is entitled to the relief sought and denies the allegations supporting the alleged relief contained in Paragraph 6 of the Complaint.

7. HGC admits the allegations contained in Paragraph 7 of the Complaint, based on information and belief.

8. HGC admits the allegations contained in Paragraph 8 of the Complaint, based on information and belief.

9. HGC admits the allegations contained in Paragraph 9 of the Complaint, based on information and belief.

10. HGC admits the allegations contained in Paragraph 10 of the Complaint.

11. HGC admits the Purchase Orders provided: "Title to the Goods shall pass to Buyer upon Delivery to Buyer in accordance with this Purchase Order." HGC otherwise denies the allegations as stated in the Paragraph 11.

12. HGC denies the allegations contained in Paragraph 12 of the Complaint as stated.

13. HGC denies the allegations contained in Paragraph 13 of the Complaint as stated.

14. HGC admits that the Purchase Orders provided: "Goods" shall mean the goods, materials, equipment, supplies, drawings, data, processes, and all other property and services, including design, expediting, inspection, delivery, installation, and testing, specified or required, to furnish the items ordered in the Purchase Order. HGC otherwise denies the allegations as stated in Paragraph 14 of the Complaint.

15. HGC admits that the Purchase Orders provided: "Delivery" shall mean Seller's successful delivery of the Goods to the agreed delivery location set forth in the Purchase Order and acceptance of such Goods by Buyer. HGC otherwise denies the allegations as stated in Paragraph 15 of the Complaint.

16. HGC denies the allegations contained in Paragraph 16 of the Complaint.

17. HGC denies the allegations contained in Paragraph 17 of the Complaint.

18. HGC denies the allegations contained in Paragraph 18 of the Complaint.

19. HGC denies the allegations contained in Paragraph 19 of the Complaint.

20. HGC lacks knowledge and information sufficient to form a belief as to the allegations in Paragraphs 20-28 and, therefore, denies such allegations.

21. HGC denies that Permico never accepted the Pipe or any portion of it as alleged in Paragraph 29. HGC lacks knowledge and information sufficient to form a belief as to the remainder of the allegations in Paragraph 29, therefore, denies such allegations.

22. HGC lacks knowledge and information sufficient to form a belief as to the allegations in Paragraphs 30-32 and, therefore, denies such allegations.

23. HGC denies the allegations concerning delivery and acceptance in Paragraph 33. HGC lacks knowledge and information sufficient to form a belief as to the remainder of the allegations in Paragraph 33 and, therefore, denies such allegations.

24. HGC lacks knowledge and information sufficient to form a belief as to the allegations in Paragraphs 34-35 and, therefore, denies such allegations.

25. HGC denies the allegations concerning delivery in Paragraph 36. HGC lacks knowledge and information sufficient to form a belief as to the remainder of the allegations in Paragraph 36 and, therefore, denies such allegations.

26. HGC lacks knowledge and information sufficient to form a belief as to the allegations in Paragraphs 37-38 and, therefore, denies such allegations.

27. HGC denies the allegations concerning delivery in Paragraph 39. HGC lacks knowledge and information sufficient to form a belief as to the remainder of the allegations in Paragraph 39 and, therefore, denies such allegations.

28. HGC lacks knowledge and information sufficient to form a belief as to the allegations in Paragraph 40 and, therefore, denies such allegations.

29. HGC denies the allegations in Paragraph 41.

30. HGC lacks knowledge and information sufficient to form a belief as to the allegations in Paragraphs 42-56 and, therefore, denies such allegations.

31. HGC admits that Permico did not pay Corpac the purchase price for the pipe as alleged in Paragraph 57 of the Complaint. HGC denies that the pipe was never delivered to Permico under the terms of the contracts between Permico and Corpac (and applicable law) and further denies that title to the Pipe did not pass to Permico in accordance with the remaining allegations contained in Paragraph 57 of the Complaint. HGC admits that it has a UCC security interest in the Pipe.

32. HGC admits the allegations contained in Paragraph 58 of the Complaint.

33. HGC lacks knowledge and information sufficient to form a belief as to the allegations in Paragraph 59 of the Complaint and, therefore, denies such allegations.

34. HGC lacks knowledge and information sufficient to form a belief as to the allegations in Paragraph 60 of the Complaint and, therefore, denies such allegations.

35. HGC lacks knowledge and information sufficient to form a belief as to the allegations in Paragraph 61 of the Complaint and, therefore, denies such allegations.

36. Paragraph 62 contains no factual allegations to which a response is required. To the extent it contains factual allegations, such allegations are denied.

37. HGC denies the allegations contained in Paragraph 63 of the Complaint.

38. Paragraph 64 contains no factual allegations to which a response is required. To the extent it contains factual allegations, such allegations are denied.

39. HGC denies the allegations contained in Paragraph 65 of the Complaint.

40. Paragraph 66 contains no factual allegations to which a response is required. To the extent it contains factual allegations, such allegations are denied.

41. HGC denies the allegations contained in Paragraph 67 of the Complaint.

42. HGC denies the allegations contained in Paragraph 68 of the Complaint.

43. HGC denies that Plaintiff is entitled to any of the relief requested in the "Prayer for Relief" section of its Complaint.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

44. Plaintiff's claims are barred in whole or in part by the doctrines of waiver, release, quasi-estoppel, and estoppel.

45. Any interest of Plaintiff in the Pipe is junior to the first priority interest of HGC. *See infra.*

## HGC'S COUNTERCLAIM FOR RELIEF

46. HGC is a special purpose entity formed to invest in a project for the development of a Y-Grade transportation and fractionation system connecting the Permian Basin to Corpus Christi and purity product end markets, including gathering pipelines, Y-Grade long-haul pipelines, fractionators, an ethane purity product pipeline, Y-Grade and purity product storage, and an LPG export terminal (the "Project"). HGC is part of the Hanwha group, a Fortune Global 500 company based in South Korea whose business spans many industries, including chemicals and materials, aerospace and mechatronics, solar energy (manufacturing, power plant development and EPC), finance, engineering & construction, and services. HGC is a creditor and party-in-interest in the Debtors' chapter 11 cases.

47. Debtor Permico Midstream Partners LLC ("Permico") was originally formed by Permico Energia LLC ("Energia") on October 24, 2017 as a member-managed Texas limited liability company.

48. Debtor Permico Midstream Partners Holdings, LLC ("Holdings") is a Texas limited liability company formed on February 5, 2019.

49. Plaintiff Corpac Steel Products Corp. ("Corpac") sold pipe to Permico for the Project.

## JURISDICTION AND VENUE

50. This Court has subject matter jurisdiction over this adversary proceeding and counterclaim pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 506, and by order of the United States District Court for the Southern District of Texas referring to this Court all cases and proceedings in this District arising in or related to a case under Title 11 of the United States Code.

51. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A), (K), and (O).

52. Venue is proper in this court pursuant to 28 U.S.C. § 1409.

53. HGC consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## FACTUAL BACKGROUND

### A. HGC's Financing of the Project and Security Interest in Permico's Assets

54. On April 30, 2019, Energia and Conquista Energy Services, LLC ("Conquista") contributed 100% of the limited liability company interests in Permico to Holdings, effective as of February 5, 2019, pursuant to a Contribution Agreement, dated as of April 30, 2019, by and between Energia and Permico (the "Contribution Agreement").

55. Contemporaneously with the execution of the Contribution Agreement, (i) Permico and Holdings (collectively, the "Debtors") entered into the Amended and Restated Limited Liability Company Agreement of Permico Midstream Partners LLC, (ii) Holdings, Energia, Conquista, and HGC entered into the Amended and Restated Limited Liability Company Agreement for Holdings (the "LLC Agreement"), (iii) HGC subscribed for 100% of the Series A Membership Interests of Holdings pursuant to the Series A Limited Liability Company Subscription Agreement (the "Subscription Agreement"), (iv) HGC and Permico entered into the Development Loan Agreement (as amended and in effect on the date hereof, the "Development Loan Agreement"), by and between Permico and HGC, and HGC made a $30 million secured loan to Permico pursuant to that agreement, (v) Permico entered into the Security Agreement in favor of HGC (the "Security Agreement" (Exhibit A)), and (vi) Energia and Conquista agreed to (a) guarantee Holdings' obligations under the LLC Agreement and the Subscription Agreement, (b) guarantee Permico's obligations under the Development Loan Agreement, and (c) indemnify Holdings and Permico in respect of their indemnification obligations under the Subscription

Agreement and the Development Loan Agreement, in each case, pursuant to the Sponsor Guaranty and Pledge Agreement between HGC, Energia, Conquista, and Holdings (the "Sponsor Guaranty and Pledge Agreement").

56. HGC agreed to provide the bulk of the funding for Holdings' $79.7 million Development Budget (as defined in the Development Loan Agreement) for the Project, which provides funding for the Development Phase to enable Holdings to achieve Financial Close. As the secured lender under the Development Loan Agreement, HGC loaned Permico $30 million (the "Secured Loan"). As a Series A Member under the LLC Agreement, HGC also contributed approximately $6.1 million in capital to Holdings, with a commitment (if all conditions were met) to contribute an additional $39 million.

57. Permico granted to HGC, as security for the Secured Loan, a lien on and first priority security interest in, all of Permico's right, title and interest in, to and under the Collateral (as defined in the Security Agreement), including all Goods and tangible property of Permico and all Assigned Agreements (as defined in the Security Agreement), including any and all contracts, letters of intent, easements, licenses, rights of way or other agreements granting Permico any option to purchase, or any right to lease or use, real property, or granting to Permico any other right to or interest in real property. *See* Exhibit A, Security Agreement, § 2.1.

58. HGC perfected its security interest on April 30, 2019 in all assets of Permico, whether then owned or thereafter acquired, developed, or created. *See* Exhibit B, UCC Financing Statement Filed 4/30/2019.

59. As set forth in HGC's objection to *Permico Energia, LLC's Emergency Motion to Dismiss Bankruptcy Cases Pursuant to 11 U.S.C. § 1112(b)*, Permico has been in material default under the Secured Loan since May 2019. *See* Docket No. 51, Case No. 20-32437.

### B. The Corpac Pipe Orders and HCG's Perfected First Priority Lien

60. In May 2019, after the parties entered into the LLC Agreement and the Development Loan Agreement, Permico executed three purchase orders dated May 7, 2019 with Corpac Steel Products Corp. ("Corpac") for certain line pipe in the amount of approximately $29,904,520.00, $18,273,193.10, and $46,249,184.54 respectively (the "Purchase Orders").

61. The Purchase Orders provided that the ordered pipe would be delivered to certain delivery locations. Between August 2019 and December 2019, pipe was delivered to the delivery locations in accordance with the Purchase Orders (hereinafter, the "Pipe"). The Purchase Orders permitted invoicing of the Pipe "upon DDP arrival of such Goods at the designated delivery point set forth in the cover of the Purchase Order". *See* Exhibit C, Purchase Orders at Exhibit B. On information and belief, Corpac did in fact invoice Permico for the delivered Pipe. Permico, after having reasonable opportunity to inspect the Pipe, did not reject the Pipe, and thus accepted the Pipe. *See* TEX. BUS. & COMM. CODE § 2.606(a)(2) ("Acceptance of goods occurs when the buyer . . . (2) fails to make an effective rejection (Subsection (a) of Section 2.602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them").

62. Notably, as further evidence of delivery and acceptance:

(a) Holdings confirmed by email dated October 2, 2019, that the Pipe had been manufactured and was already delivered or in the process of being delivered (*see* Exhibit D);

(b) The first "amendment" to the Purchase Orders provided that "Buyer and Seller agree that, (1) Buyer has previously agreed and paid interest through the Effective Date …. and (2) to the extent Buyer has failed to pay amounts due and owing for Goods Delivered in accordance with the Purchase Order, beginning on December 1, 2019, Buyer shall owe additional interest on such unpaid amounts…" (*see* Exhibit E, Amendment No. 1, at Section A.2., Amended 9.9(a) (emphasis added));

(c) The first "amendment" further provided that "It is agreed that the Delivery Dates for the Goods prior to the Initial Payment Date have been met by the Seller and No Delay Liquidated Damages shall apply to such delivery of Goods." (*see* Exhibit E, Amendment No. 1, at Section A.9., Addition 3 (emphasis added)); and

(d) In its January 31, 2020 letter to HGC, Corpac admitted that the line pipe "reached the delivery location indicated in the Purchase Orders and owned by Womble Company, Inc." and did not assert that any additional work needed to be done on the pipe before it could be accepted by Permico or that Womble Company, Inc. acted as Corpac's "bailee" (*see* Exhibit F, January 31, 2020 Letter).

63. Based on the foregoing, in accordance with the Purchase Orders and applicable law, title to the Pipe – *i.e.*, Goods under the Purchase Order – passed to Permico upon delivery. *See* Exhibit C, Purchase Orders ("Title to the Goods shall pass to Buyer upon Delivery to Buyer in accordance with this Purchase Order."); *see also* TEX. BUS. & COM. CODE ANN. § 2.503(a) ("Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery. The manner, time and place for tender are determined by the agreement and this chapter, . . ."). Specifically, because Corpac delivered "at [the] particular destination" required by the Purchase Orders, delivery occurred pursuant to § 2.503(c) and, accordingly, title passed to Permico at such time. *See id.* at § 2.503(c) ("Where the seller is required to deliver at a particular destination tender requires that he comply with Subsection (a) and also in any appropriate case tender documents as described in Subsections (d) and (e) of this section.").

64. Pursuant to the Security Agreement, Permico granted to HGC, as security for the secured obligations, a lien on and first priority security interest in, all of Permico's right, title and interest in, to, and under the Collateral. Exhibit A, Security Agreement. The Collateral is defined to include, among other things, all of Permico's right, title, and interest in, to and under all goods and equipment, whether existing as of the date of the Security Agreement or thereafter arising or acquired. *See* Exhibit A, Security Agreement at § 2.1; *see also* TEX. BUS. & COM. CODE ANN. § 9.204(a) (recognizing that "a security agreement may create or provide for a security interest in after-acquired collateral").

65. HGC's first priority lien and security interest thus attached to the Pipe when title passed to Permico upon delivery. Additionally, the Purchase Orders provided that any lien or claim by Corpac would be subordinated to any liens granted in favor of Permico's lender, *i.e.*, HGC. *See* Exhibit C, Purchase Orders ("Seller hereby subordinates any mechanics' and materialmen's liens or other claims or encumbrances that may be brought by Seller against any or all of the Goods, Buyer Group's property or any hydrocarbon product associated with such property to any liens granted in favor of Buyer Group's lenders for the Project, whether such lien in favor of such lenders is created, attached or perfected prior to or after any such liens, claims or encumbrances, and Seller shall require its subcontractors to similarly subordinate their lien, claim and encumbrance rights."); *see also* TEX. BUS. & COM. CODE ANN. § 9.339 ("This chapter does not preclude subordination by agreement by a person entitled to priority."). Accordingly, HGC's liens are first in priority and senior to any liens asserted by Corpac.

Any subsequent attempt to amend the terms of title transfer or otherwise transfer title back from Permico to Corpac does not affect HGC's prior perfected lien on the Pipe (and its proceeds) and HGC's rights as a secured creditor—specifically, HGC's lien rights remain attached to the Pipe even after any purported modifications/transfers and Corpac's security interests (if any) remain fully subordinated to HGC's security interests pursuant to the Purchase Orders. Additionally, such amendment(s) would constitute avoidable transfers.

## CAUSE OF ACTION

### (Determination of Validity, Extent, and Priority of HGC's Lien and Declaratory Judgment)

66. HGC re-alleges and incorporates herein by reference each and every allegation and paragraph set forth previously.

67. Pursuant to Bankruptcy Rule 7001(2), (9), 11 U.S.C. § 506, and 28 U.S.C. §§ 157, 2201, and 2202, this Court should determine and declare, as follows:

i) that HGC has a valid and first priority lien on the Pipe;

ii) that HGC's lien was first in time as it was filed of record on April 30, 2019 and was perfected upon attachment—i.e., the passage of title in the Pipe to Permico;

iii) that any lien or claim by Corpac is subordinated to the lien granted in favor of HGC. *See* Exhibit A, Purchase Orders; *see also* TEX. BUS. & COM. CODE ANN. § 9.339;

iv) whether title to the Pipe resides in Permico or Corpac, the Pipe remains encumbered by HGC's liens; and

v). any purported transfer of title back to Corpac is a voidable transfer under applicable Bankruptcy and Texas law and was not free and clear of HGC's valid and perfected liens. *See* TEX. BUS. & COM. CODE ANN. § 9.315(a) ("a security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien").

**PRAYER FOR RELIEF**

HGC respectfully requests that this Court do the following:

1. Deny all relief sought by Corpac;
2. Issue a declaratory judgment and determination that HGC has a valid and perfected, first priority lien on the Pipe, superior to Corpac, the Debtors and any other parties; and
3. Grant HGC such other and further relief to which it is entitled, including judgment for costs.

**Dated: June 12, 2020.**

Respectfully submitted,

**PORTER HEDGES LLP**

By: */s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl
State Bar No. 24038592
Eugene M. Nettles
State Bar No. 14927300
Jonna N. Summers
State Bar No. 24060649
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6295
E-Mail: jwolfshohl@porterhedges.com
enettles@porterhedges.com
jsummers@porterhedges.com

**ATTORNEYS FOR DEFENDANT, HGC MIDSTREAM INV, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system for the United States Bankruptcy Court for the southern District of Texas.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl